# In the United States Court of Appeals for the Fifth Circuit

---

James Dondero; Highland Capital Management Fund
Advisors, L.P.; The Dugaboy Investment Trust; Nexpoint
Real Estate Partners, L.L.C.; and Get Good Trust,

*Plaintiffs-Appellants,*

v.

Stacey G. Jernigan; Highland Capital Management, L.P.,

*Defendants-Appellees.*

---

On Appeal from the United States District Court for the
Northern District of Texas, Dallas Division
No. 3:23-CV-0726-S

---

## APPELLANTS' PETITION FOR REHEARING EN BANC

---

John D. Ashcroft
Johnny Sutton
Ashcroft Sutton Reyes
919 Congress Avenue, Suite 1325
Austin, Texas 78701
(512) 370-1800 (phone)
(703) 247-5446 (fax)
rrussell@ashcroftlawfirm.com
jsutton@ashcroftlawfirm.com

Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Appellants*

# CERTIFICATE OF INTERESTED PERSONS

Counsel of record certifies that the following persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

| Appellants | Appellants' Counsel |
|---|---|
| • James D. Dondero<br>• Highland Capital Management Fund Advisors, L.P.<br>• The Dugaboy Investment Trust<br>• NexPoint Real Estate Partners, LLC<br>• Get Good Trust | Jonathan F. Mitchell<br>Mitchell Law PLLC<br><br>John Ashcroft<br>Ashcroft Sutton Reyes<br><br>Michael Lang<br>Crawford Wishnew & Lang PLLC |

| Appellee | Appellee's Counsel |
|---|---|
| • The Honorable Stacey G. Jernigan, United States Bankruptcy Court for the Northern District of Texas | |

| Debtor | Proposed Intervenor's Counsel |
|---|---|
| • Highland Capital Management, L.P. | Jeffrey N. Pomerantz<br>John A. Morris<br>Pachulski Stang Ziehl & Jones LLP<br><br>Melissa S. Hayward<br>Zachary Z. Annabel<br>Hayward PLLC |

/s/ Jonathan F. Mitchell

Jonathan F. Mitchell

*Counsel for Appellants*

i

# INTRODUCTION AND RULE 40(b)(2) STATEMENT

The panel's decision raises a question of extraordinary importance: What standard of review should an appellate court apply when reviewing a decision denying recusal? The panel applied a deferential, abuse-of-discretion standard in upholding the district court's order affirming the bankruptcy judge's refusal to recuse. And although the district court did not even mention the standard of review when it affirmed the bankruptcy judge's refusal to recuse, it is apparent that the district court adopted a similarly deferential posture toward the bankruptcy court. Both the panel and the district court erred in doing so. The recusal statute makes recusal mandatory, not discretionary, under specified circumstances. *See* 28 U.S.C. § 455. And an abuse-of-discretion standard confers unwarranted deference on the decision of the very judge whose impartiality has been called into question. Other courts have recognized that an abuse-of-discretion standard conflicts with rulings from other federal appellate courts. *See, e.g.*, *United States v. Balistrieri*, 779 F.2d 1191, 1216 (7th Cir. 1995) ("Our standard of review under [28 U.S.C. § 455] is *de novo*.").

And this is far from the ordinary case of a party seeking recusal when dissatisfied with decisions of a lower court: The bankruptcy court *is writing books clearly related to the subject matter of this litigation*. The continuation of the bankruptcy—remarkably now improperly liquidating a solvent company—dovetails with the bankruptcy judge's interest in further material for her books. That is a source of bias entirely external to this case and contrary to Congress's mandate to avoid the appearance of impartiality, a requirement that is crucial to preserving judicial integrity.

The Court should determine that a highly deferential standard of review cannot be squared with the recusal statute. And this Court should avoid the conflict with other courts of appeals that this panel decision would otherwise create.

# TABLE OF CONTENTS

Certificate of interested persons ................................................. i

Introduction and Rule 35(b) statement .................................. ii

Table of contents ................................................................ iv

Table of authorities ............................................................. v

Issue meriting en banc consideration .................................. 1

Statement of course of proceedings and disposition of the case ............................. 1

Statement of facts ............................................................... 7

Argument ............................................................................ 7

    I.    The Seventh Circuit has consistently and correctly held that de novo review is appropriate when analyzing a judge's recusal decision on petition for writ of mandamus ........................... 9

    II.   An abuse-of-discretion standard of review is incompatible with the text of 28 U.S.C. § 455, which is phrased in mandatory terms and confers no discretion on judges who are presented with recusal motions ................................................. 12

Conclusion .......................................................................... 15

Certificate of compliance .................................................... 16

Certificate of electronic compliance ................................... 17

Certificate of service .......................................................... 18

# TABLE OF AUTHORITIES

## Cases

*Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009) ............................................. 2

*Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367 (2004) ............................................. 6

*Dunkley v. Ill. Dep't of Human Svcs.*,
 No. 23-2215, 2024 WL 1155448 (7th Cir. Mar. 18, 2024) .................................. 10

*Estes v. Ramirez*,
 No. 7:14-CV-69, 2014 WL 11698007 (S.D. Tex. June 13, 2014) ......................... 12

*Health Servs. Acquisition Corp. v. Liljeberg*, 796 F.2d 796 (5th Cir. 1986) ............... 13

*Hook v. McDade*, 89 F.3d 350 (7th Cir. 1996) ........................................................... 10

*In re Am. Airlines, Inc.*, 972 F.2d 605 (5th Cir. 1992) ............................................. 14

*In re Chevron U.S.A., Inc.*, 121 F.3d 163 (5th Cir. 1997) ............................... 7, 13, 15

*In re City of Houston*, 745 F.2d 925 (5th Cir. 1984) ................................................. 12

*In re Sherwin-Williams Co.*, 607 F.3d 474 (7th Cir. 2010) ........................................ 10

*In re Wilborn*, 401 B.R. 848 (Bankr. S.D. Tex. 2009) .............................................. 13

*Kmart Corp. v. Aronds*, 123 F.3d 297 (5th Cir. 1997) ................................................ 5

*Lewis v. Curtis*, 671 F.2d 779 (3d Cir. 1982) ..................................................... 8, 15

*Liteky v. United States*, 510 U.S. 540 (1994) ............................................................ 6

*Marshall v. Jerrico, Inc.*, 446 U.S. 238 (1980) ......................................................... 7

*Matter of Burch*, 818 Fed. App'x 367 (5th Cir. 2020) .............................................. 13

*Offutt v. United States*, 348 U.S. 11 (1954) ............................................................... 7

*People Helpers Found., Inc. v. City of Richmond*,
 12 F.3d 1321 (4th Cir. 1993) ............................................................................. 10

*Sac & Fox Nation of Okla. v. Cuomo*, 193 F.3d 1162 (10th Cir. 1999) ...................... 10

*Taylor v. O'Grady*, 888 F.2d 1189 (7th Cir. 1989) .................................................. 10

*United States v. Balistrieri*, 779 F.2d 1191 (7th Cir. 1995) ....................... ii, 2, 8, 9, 10

## Statutes

28 U.S.C. § 158(a) ...................................................................................................... 3

28 U.S.C. § 455 ................................................................passim

## Other Authorities

Debra Lyn Basset, *Judicial Disqualification in the Federal Appellate Courts*, 187 Iowa L. Rev. 1203 (2002) ................................................................11

Cassandra Burke Robinson & Gregory Hilbert, *Judicial Disqualification on Appeal*, 53 Akron L. Rev. 573 (2019) ......................................11

13D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* (3d ed. 2008) ................................................................11

## Rules

Fed. R. Bankr. P. 5004(a) ................................................................ 13

## ISSUE MERITING EN BANC CONSIDERATION

Whether a judge's ruling on a motion to recuse pursuant to 28 U.S.C. § 455 should be reviewed de novo or for abuse of discretion.

## STATEMENT OF COURSE OF PROCEEDINGS AND DISPOSITION OF THE CASE

The Honorable Stacey G. Jernigan serves as the Chief Judge of the U.S. Bankruptcy Court for the Northern District of Texas, and she is presiding over the Chapter 11 bankruptcy of Highland Capital Management, L.P. When Highland petitioned for relief in 2019, its co-founder, appellant James Dondero, was serving as the company's CEO and remained significantly involved in its management. *See* Panel Op. at 2-3. But shortly after the bankruptcy proceedings began, Mr. Dondero surrendered his positions at Highland and was replaced by an Independent Board. *See id*. Other creditors and parties-in-interest appeared and participated alongside Mr. Dondero in the bankruptcy proceedings. For simplicity and ease of exposition, we will refer to these entities collectively as "the Dondero parties."

As the bankruptcy proceedings progressed, Chief Judge Jernigan repeatedly behaved in a manner that displayed bias against Mr. Dondero and led the Dondero Parties to reasonably question her impartiality. *See* Brief of Appellants at 8-10 & n.4 (documenting these episodes). Chief Judge Jernigan had also expressed unfavorable opinions of Mr. Dondero and Highland's management in a separate and previous bankruptcy case involving Acis Capital Management. *See id*. at 5-6. The Dondero Parties therefore moved to recuse Chief

1

Judge Jernigan in March 2021, arguing that her "impartiality might reasonably be questioned" due to her repeated disparaging statements from the bench about Mr. Dondero personally and his role in the reorganization proceedings. ROA.80-117. One week later, Chief Judge Jernigan denied the motion. ROA.3656-3666. Chief Judge Jernigan first suggested that the motion to recuse was "not timely," although she did not deny the motion on that basis and acknowledged that the recusal statute imposes no timeliness requirement. ROA.3660 ("[T]he applicable statute and rule do not expressly address timeliness."); ROA.3662 ("[S]ince the Motion to Recuse raises serious issues, the court will nevertheless analyze it as though it is timely."). And despite recognizing her obligation to apply an objective standard to the recusal determination, the judge relied in part on her subjective belief in her impartiality to conclude recusal was not warranted. ROA.3665 ("The Presiding Judge does not believe she harbors, or has shown, any personal bias or prejudice against the Movants."); *but see Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 881 (2009) ("The Court asks not whether the judge is actually, subjectively biased, but whether the average judge in his position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.'"); *Balistrieri*, 779 F.2d at 1204 ("Section 455(a) . . . is directed against the *appearance* of partiality, whether or not the judge is actually biased." (internal citation omitted). The order denying recusal does not address the evidence of partiality in any detail. *See generally* ROA.3656-3666. The Dondero Parties appealed, but the district court dismissed on jurisdictional grounds, as the recusal decision was interlocutory and

fell outside the appellate jurisdiction of the district court. ROA.5840-5853; 28 U.S.C. § 158(a).

While this appeal was pending, Chief Judge Jernigan continued to threaten the Dondero Parties, make negative comments about them from the bench, impose hefty sanctions on them and their counsel without proper cause or evidentiary support, and single them out for disparate treatment. *See* Brief of Appellants at 12-20 (describing examples). In response, the Dondero Parties moved to supplement their earlier recusal motion and requested a final, appealable order so that a judge other than the presiding judge could review the arguments for recusal. *See* ROA.6221-6231. Chief Judge Jernigan denied the motion on procedural grounds but invited the Dondero Parties to submit a new motion to recuse (ROA.14719-14721), which they filed in October 2022. ROA.2842-2870.

After filing their renewed recusal motion, the Dondero Parties learned for the first time that Chief Judge Jernigan had written two novels that express negative views of the industry in which Mr. Dondero and his companies operate—and that she had published these novels while presiding over the bankruptcies of the Acis and Highland hedge funds. The two novels, entitled *He Watches All My Paths* and *Hedging Death*, contain derisive commentary about hedge fund leaders and the specific financial instruments at issue in Highland's bankruptcy. ROA.3207-3211. In the books, Chief Judge Jernigan derides "[h]igh flying hedge fund managers" that "suck up money like an i-robot vacuum" and display "outrageous amounts of hubris" as part of their "bro

culture." ROA.3208. And *Hedging Death*, which was written and published while Chief Judge Jernigan was presiding over the Highland hedge fund bankruptcy, has striking parallels to Highland while it was under Mr. Dondero's management:

- The book involves a company called Ranger Capital. Highland's former name was Ranger Asset Management. ROA.3209; *Kischner v. Dondero*, Case No. 3:21-03076-sgj (Bankr. N.D. Tex.), Dkt. 310 at 16-17.

- The book describes Ranger as a "multi-billion-dollar conglomerate, which manage[s] not just hedge funds, but private equity funds, CDOs, CLOs, REITS, life settlements, and all manner of complicated financial products." Highland was once a "multibillion-dollar" enterprise that managed the exact same unusual mix of investments. ROA.3209; *Kirschner*, Case No. 3:21-03076-sgj (Bankr. N.D. Tex.), Dkt. 310 at 16-17.

- The book describes "byzantine" international tax structures and off-shore transactions as pretexts for hiding illegal activity and money laundering. *Kirschner*, No. 3:21-03076-sgj (Bankr. N.D. Tex.), Dkt. 310 at 18. Highland and Mr. Dondero use international tax structures and off-shore transactions, and the bankruptcy judge repeatedly expressed her suspicion of them and called them "byzantine." *See, e.g.*, ROA.2924-2925 at 86:16-87:15.

Each of the books also pits a protagonist bankruptcy judge that resembles Chief Judge Jernigan (the fictional judge is even married to a police officer, as Chief Judge Jernigan is) against an antagonist hedge-fund manager in the financial-services industry that resembles Mr. Dondero. ROA.3208-3209.

Immediately after learning of the novels, the Dondero Parties supplemented their renewed recusal motion to explain why the novels also merited recusal. ROA.3207-3211. Three days later, Chief Judge Jernigan denied the renewed recusal motion. ROA.44-79.

The Dondero Parties sought mandamus relief from the federal district court.

On March 8, 2024, the district court denied the mandamus petition, but it did not discuss the standard of review that should apply to Chief Judge Jernigan's refusal to recuse. ROA.18885-18889.

The Dondero parties appealed, and a panel of this Court affirmed. The panel noted that the Dondero Parties "easily" meet the first requirement for mandamus relief—*i.e.*, that they have had no "'other adequate means to attain the [requested] relief.'" Panel Op. at 6.

But the panel held that the Dondero parties could not meet the second or third requirements for mandamus relief. *See* Panel Op. at 7-15. With respect to the second requirement—whether it was "clear and indisputable" that the presiding judge's impartiality might reasonably be questioned—the panel relied on Fifth Circuit precedent establishing that "[r]ecusal decisions are reviewed for abuse of discretion, and in general, 'if a matter is within the district court's discretion, the litigant's right to a particular result cannot be 'clear and indisputable.'" Panel Op at 7 (quoting *Kmart Corp. v. Aronds*, 123 F.3d 297, 300-01 (5th Cir. 1997)). The panel then considered the examples of bias cited by the Dondero Parties and concluded that none "'reveal[ed] such a high

degree of favoritism or antagonism as to make fair judgment impossible.'" Panel Op. at 15 (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). The panel did not, however, explicitly analyze whether any of the examples "might reasonably" cause an objective observer to question the presiding judge's impartiality.

This deferential approach particularly affected the extraordinary aspect of this case: The bankruptcy judge's work as an author of what were presented as fiction books. This author was drawing her stories from her job—writing about judges presiding over hedge-fund bankruptcies. The panel acknowledged that "some similarities between the books [written by Chief Judge Jernigan] and the cases before Chief Judge Jernigan *may* raise cause for concern." *Id.* The panel held it was nonetheless insufficient to warrant recusal under the exceedingly deferential standard of review produced by combining the abuse-of-discretion standard with the requirement to show a "clear and indisputable" entitlement to mandamus. Instead, the panel incorrectly deferred to the judgment of a trial judge who was engaging in precisely the type of perilous extrajudicial conduct that merits serious review from the appellate courts.

Because the panel found that the Dondero parties lacked a clear and indisputable right to mandamus relief, the panel also found that mandamus was not "'appropriate under the circumstances.'" *Id.* (quoting *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380-81 (2004)).

## STATEMENT OF FACTS

The facts necessary to the argument of the issues are set forth in the Rule 35(b) statement, *see supra* at ii-iii, and the statement of the course of proceedings and disposition of the case, *see supra* at 1-6.

## ARGUMENT

Central to the American justice system and its guarantee of due process is access to fair proceedings before a fair tribunal. For that reason, the federal recusal statute provides that a judge *must* recuse whenever her "impartiality might reasonably be questioned." 28 U.S.C. § 455. Contrary to the panel's conclusion that "[t]he bar for recusal under § 455 is a high one," the Supreme Court of the United States has for decades counseled that "'justice must satisfy the *appearance of justice*.'" *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980) (emphasis added) (quoting *Offutt v. United States*, 348 U.S. 11, 14 (1954)). The statute is intended not only to protect litigants from actual bias in their judge, but also to promote public confidence in the impartiality of the judicial process. Thus, the statute is designed to protect against the *appearance* of partiality. As this Court has explained: "The purpose of section 455(a) . . . is apparent; it seeks to protect against even the appearance of impropriety in judicial proceedings and we are charged with determining 'whether a reasonable and objective person, knowing all of the facts, would harbor doubts concerning the judge's impartiality.'" *In re Chevron U.S.A., Inc.*, 121 F.3d 163, 165 (5th Cir. 1997) (emphasis added). For this reason, this Court has held that "if the question of whether § 455(a) requires disqualification is a close one, the

balance tips in favor of recusal." *Id.*; *accord Lewis v. Curtis*, 671 F.2d 779, 789 (3d Cir. 1982).

To protect the appearance of justice, the Court should rehear the case en banc. The panel, in denying mandamus relief, employed the highly deferential abuse-of-discretion standard of review. That approach cannot be squared with the federal recusal statute, which is written in mandatory terms. The congressional command for judges to recuse in certain circumstances is simply inconsistent with marking the decision as discretionary.

An abuse-of-discretion standard of review also thwarts the apparent purpose of the federal recusal statute to preserve the integrity of the judicial system and the appearance thereof. Such a standard requires deference to the recusal ruling of the very judge accused of partiality. Against charges that a judge is not impartial, deferring to that allegedly compromised judge does little to assure the public that cases are being adjudicated impartially. After all, that same lack of impartiality may also infect the judge's decision on whether to recuse. The whole system of preserving judicial integrity requires at least one set of judges—not alleged to lack impartiality—to take a clean, *de novo* look at the recusal question.

Other circuit courts recognize the above and require a *de novo* review of lower court recusal decisions. Accordingly, the panel's abuse-of-discretion standard brings the Fifth Circuit into conflict with the Seventh Circuit. *See United States v. Balistrieri*, 779 F.2d at 1216 (7th Cir. 1995) ("Our standard of review under [28 U.S.C. § 455(b)(1)] is *de novo*."). The en banc court should

address the exceptionally important question of whether the Fifth Circuit should adopt a less deferential standard of review when considering a judge's decision not to recuse.

This is a case in which applying an incorrect standard of review made a material difference. This is not the ordinary case of appellants complaining about harsh decisions below. Here, the bankruptcy judge took the extraordinary act of *writing books of ostensible fiction regarding her role as a judge and her battle against a hedge fund in her court.* The bankruptcy judge, who should have been focusing on her work and speaking solely through judicial opinions about it, was playing with matches on nights and weekends. *Amid such exceptional, extrajudicial activity,* a judge should not be deferred to when asked to recuse. The integrity of the judicial system requires, at least, that reviewing courts take a serious look at this extrajudicial behavior and whether it compromises the appearance of impartiality essential to confidence in the courts.

## I. The Seventh Circuit Has Consistently And Correctly Held That De Novo Review Is Appropriate When Analyzing A Judge's Recusal Decision On Petition For Writ Of Mandamus

In stark contrast to the Fifth Circuit, the Seventh Circuit has, for nearly forty years, consistently conducted *de novo* review of recusal decisions under 28 U.S.C. § 455—even when reviewing recusal decisions on petition for writ of mandamus. The de novo standard was first established in *United States v. Balistrieri*, 779 F.2d 1191 (7th Cir. 1995), which reviewed on appeal a district judge's refusal to recuse under 28 U.S.C. § 455(b)(1). That provision requires

recusal when a judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." *Id.*; *see also Balistrieri*, 779 F.2d at 1202-03. Since *Balistrieri*, the Seventh Circuit has applied de novo review to *all* recusal rulings made under § 455, including decisions made under § 455(a) that the Seventh Circuit reviews on petition for writ of mandamus. *See Dunkley v. Ill. Dep't of Human Svcs.*, No. 23-2215, 2024 WL 1155448, at *3 (7th Cir. Mar. 18, 2024); *In re Sherwin-Williams Co.*, 607 F.3d 474, 477 (7th Cir. 2010) (conducting de novo review of recusal decision under § 455(a) on petition for writ of mandamus); *Hook v. McDade*, 89 F.3d 350, 353 (7th Cir. 1996) (same); *Taylor v. O'Grady*, 888 F.2d 1189, 1201 (7th Cir. 1989). *Sherwin-Williams* and *Taylor* are in direct conflict with the panel opinion, as they each applied *de novo* rather than deferential review when a litigant sought mandamus relief in response to a judge's refusal to recuse under 28 U.S.C. § 455(a).

Other federal circuit courts have also applied a *de novo* standard of review to questions of judicial impartiality, though not consistently. *See, e.g., People Helpers Found., Inc. v. City of Richmond*, 12 F.3d 1321, 1325 (4th Cir. 1993) ("This court reviews questions of judicial bias de novo."); *Sac & Fox Nation of Okla. v. Cuomo*, 193 F.3d 1162, 1168 (10th Cir. 1999) (noting disqualification for an appearance of bias is "generally" reviewed for an abuse of discretion, but that when the trial judge does not "create a record or document her decision not to recuse," the court will apply a de novo standard).

Wright and Miller have also endorsed the Seventh Circuit's de novo approach to judicial recusal decisions: "Because the disqualification statutes are mandatory and reflect a societal interest in an impartial judiciary, there is a strong argument that appellate courts should apply a *de novo* standard in reviewing recusal decisions." 13D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3553 (3d ed. 2008).

Other commentators similarly have counseled that de novo review of recusal decisions is appropriate. *See, e.g.*, Cassandra Burke Robinson & Gregory Hilbert, *Judicial Disqualification on Appeal*, 53 Akron L. Rev. 573, 594-95 (2019) ("[T]he legal standard is clearly established under § 455, and the underlying facts are rarely disputed. The only question is whether those facts give rise to a reasonable question about the judge's impartiality. If they do, the judge must step aside—there is no room for the exercise of discretion within that process."); Debra Lyn Basset, *Judicial Disqualification in the Federal Appellate Courts*, 187 Iowa L. Rev. 1203, 1255 (2002) ("In light of the existing anomaly requiring district judges to rule on motions involving their own partiality, and the undeniable importance of judicial impartiality to due process, the abuse of discretion standard accords too much deference to the trial judge's determination.").

This Court's continued use of an abuse-of-discretion review is incompatible with the text, structure, and purpose of the federal recusal statute. The standard simply gives too much deference to the opinion of the judge being accused of partiality. And the standard gives the public no assurance that at

least one set of judges—not alleged to lack impartiality—has taken a clean look at whether a judge handling a case is impartial.

## II. AN ABUSE-OF-DISCRETION STANDARD OF REVIEW IS INCOMPATIBLE WITH THE TEXT OF 28 U.S.C. § 455, WHICH IS PHRASED IN MANDATORY TERMS AND CONFERS NO DISCRETION ON JUDGES WHO ARE PRESENTED WITH RECUSAL MOTIONS

The abuse-of-discretion standard can be applied only when the law confers discretion upon the decisionmaker being reviewed. It is incongruous to apply this standard of review to a statute such as 28 U.S.C. § 455, which *mandates* recusal whenever a judge's impartiality "might reasonably be questioned" and withholds any form of "discretion" from judges who are tasked with applying the statute.

The Fifth Circuit has long held that recusal, or judicial disqualification, is a pure question of law. *See In re City of Houston*, 745 F.2d 925, 927 (5th Cir. 1984) ("The issue of judicial disqualification is solely one of law.").[1]

The text of the federal recusal statute admits of no discretion, providing that a judge "shall" recuse when certain circumstances are presented. And it imposes a low substantive threshold for recusal to be mandatory: "Any justice, judge, or magistrate judge of the United States **shall** disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28

---

1. Recusal is synonymous with judicial disqualification. *See Estes v. Ramirez*, No. 7:14-CV-69, 2014 WL 11698007, at *2 (S.D. Tex. June 13, 2014), amended in part, No. 7:14-CV-69, 2014 WL 11698095 (S.D. Tex. Aug. 7, 2014).

U.S.C. § 455(a) (emphasis added). The Federal Rules of Bankruptcy Procedure expressly provide that disqualification of a bankruptcy judge "[*shall* be] governed by 28 U.S.C. § 455." Fed. R. Bankr. P. 5004(a) (emphasis added); *see also Matter of Burch*, 818 Fed. App'x 367, 368 (5th Cir. 2020) (noting that bankruptcy judges are governed by the federal recusal statute); *In re Wilborn*, 401 B.R. 848, 859-60 (Bankr. S.D. Tex. 2009) (same).

This Court has explicitly recognized the mandatory nature of the recusal statute: "The terms of section 455(a) are mandatory and self-executing; the judge must recuse himself where there is an appearance of partiality regardless of whether a motion to recuse had been made." *Health Servs. Acquisition Corp. v. Liljeberg*, 796 F.2d 796, 802 (5th Cir. 1986), *aff'd*, 486 U.S. 847 (1988). This Court—without explanation—has recognized the tension between the mandatory nature of the statute and this Court's abuse-of-discretion standard for reviewing recusal decisions: In this Court, "[a]lthough section 455 speaks in mandatory language, in actual application we have recognized that the decision to recuse is committed to the sound discretion of the district court and typically is reviewed for an abuse thereof." *In re Chevron, U.S.A., Inc.*, 121 F.3d 163, 165 (5th Cir. 1997).

This Court should resolve this tension rather than continue it. This Court should adopt (and require all courts reviewing petitions for writ of mandamus to apply) the more appropriate *de novo* standard of review. And the Court should give proper weight to the broad scope of the substantive statutory

standard prescribed by Congress that requires recusal whenever a judge's impartiality "might reasonably be questioned."

In fact, this Court already employs a de novo standard to the similar issue of attorney disqualification. *See In re Am. Airlines, Inc.*, 972 F.2d 605, 609 (5th Cir. 1992). As the Court explained in *American Airlines*, "a district court's ruling upon a disqualification motion is not a matter of discretion." *Id.* As a result, when conducting an appellate review of a ruling on an attorney disqualification motion, the reviewing court "carefully examin[es] the district court's application of relevant ethical standards." *Id.*

A similar approach should apply to judicial disqualifications, where there is an even stronger justification for non-deferential review, particularly when an Article I bankruptcy judge's impartiality is being questioned. Again, the federal recusal statute mandates recusal whenever the presiding judge's impartiality "might reasonably be questioned." 28 U.S.C. § 455(a). In other words, the statute asks how an objective observer would view the judge's actions and whether that observer might reasonably "question" those actions, as opposed to how the observer might answer such questions. Yet the statute requires the presiding judge—the very person accused of partiality—to decide whether to recuse in the first instance. It stands to reason that the presiding judge will have *subjective* and highly personal views of her own partiality, making a truly objective review of the record virtually impossible. It makes little sense to give deference to a presiding judge's opinion under the circumstances, and such deference certainly does not promote federal law's textual

mandate and policy of tipping the balance in favor of the party seeking recusal. *See Chevron*, 121 F.3d at 165; *Lewis*, 671 F.2d at 789. An abuse-of-discretion standard is inadequate to ensure appropriate adherence to the mandate of recusal whenever the judge's impartiality might reasonably be questioned.

## CONCLUSION

The petition for rehearing en banc should be granted.

Respectfully submitted.

 /s/ Jonathan F. Mitchell

JOHN D. ASHCROFT
JOHNNY SUTTON
Ashcroft Sutton Reyes
919 Congress Avenue, Suite 1325
Austin, Texas 78701
(512) 370-1800 (phone)
(703) 247-5446 (fax)
rrussell@ashcroftlawfirm.com
jsutton@ashcroftlawfirm.com

JONATHAN F. MITCHELL
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Appellants*

# CERTIFICATE OF COMPLIANCE

with type-volume limitation, typeface requirements,
and type-style requirements

1.     This motion complies with the type-volume limitation of Fed. R. App. P. 40(d)(3)(A) because it contains 3,900 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.     This motion complies with the type face and type-style requirements of Fed. R. App. P. 27(d)(1)(E), 32(a)(5), and Fed. R. App. P. 32(a)(6) because it uses Equity Text B 14-point type face throughout, and Equity Text B is a proportionally spaced typeface that includes serifs.

                                  /s/ Jonathan F. Mitchell
                                  JONATHAN F. MITCHELL

Dated: December 3, 2024             *Counsel for Appellants*

# CERTIFICATE OF ELECTRONIC COMPLIANCE

Counsel also certifies that on December 3, 2024, this brief was transmitted to Mr. Lyle W. Cayce, Clerk of the United States Court of Appeals for the Fifth Circuit, via the court's CM/ECF document filing system, https://ecf.ca5.uscourts.gov

Counsel further certifies that: (1) required privacy redactions have been made, 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R. 25.2.1; and (3) the document has been scanned with the most recent version of VirusTotal and is free of viruses.

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Appellants*

## CERTIFICATE OF SERVICE

I certify that on December 3, 2024, this document was electronically filed with the clerk of the court for the U.S. Court of Appeals for the Fifth Circuit and served through CM/ECF upon all counsel of record in this case.

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Appellants*

# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 5, 2024

Lyle W. Cayce
Clerk

No. 24-10287

JAMES DONDERO; HIGHLAND CAPITAL MANAGEMENT FUND
ADVISORS, L.P.; THE DUGABOY INVESTMENT TRUST;
NEXPOINT REAL ESTATE PARTNERS, L.L.C.; GET GOOD TRUST,

*Plaintiffs—Appellants,*

*versus*

STACEY G. JERNIGAN; HIGHLAND CAPITAL MANAGEMENT,
L.P.,

*Defendants—Appellees.*

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:23-CV-726

Before WIENER, WILLETT, and DUNCAN, *Circuit Judges*.

PER CURIAM:[*]

Appellants James Dondero and affiliated entities Highland Capital
Management Fund Advisors, L.P., The Dugaboy Investment Trust,
NexPoint Real Estate Parnters, L.L.C., and Get Good Trust ("the Dondero
Parties") are parties to a bankruptcy proceeding in the Northern District of

---

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 24-10287

Texas. They appeal a district court order denying their petition for mandamus that sought the recusal of the presiding bankruptcy judge.

The order of the district court is AFFIRMED.[1]

## I

Highland Capital Management, L.P. was a Dallas-based investment firm that managed billion-dollar, publicly traded investment portfolios for nearly three decades. *Matter of Highland Capital Mgmt., L.P. (Highland I)*, 48 F.4th 419, 424 (5th Cir. 2022). James Dondero was Highland's CEO. In 2019, after facing a $180 million adverse judgment in an arbitration, Highland voluntarily filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Delaware. Shortly after, the Creditors Committee for Highland moved to transfer the bankruptcy case to the United States Bankruptcy Court for the Northern District of Texas on the basis that Chief Judge Jernigan was "already intimately familiar with the Debtor's principals and complex organizational structure," having presided over involuntary bankruptcy cases commenced against Acis Capital Management, L.P. and Acis Captial Management GP, L.L.C.—entities where Dondero had also served as an executive. The motion was granted, and the case was assigned to Chief Judge Jernigan.

In January 2020, Chief Judge Jernigan held the first hearing in the Highland case, regarding approval of a settlement between Highland and the Creditors Committee under which Dondero would surrender his control positions at Highland and be replaced by an Independent Board. *Highland I*, 48 F.4th at 425. Chief Judge Jernigan approved the agreed order, and

---

[1] Also before us is a motion by the Dondero Parties requesting we take judicial notice of certain documents. We affirm the order of the district court without referring to these documents. Accordingly, the motion is DENIED AS MOOT.

Dondero stepped down as officer and director of Highland. *Id.* He remained an employee of Highland as a portfolio manager until October 2020, when the Independent Board demanded he step down.

Throughout 2020, Dondero proposed several reorganization plans, which the Committee and Independent Board opposed. *Id.* at 426. The Committee and Board instead formed their own plan. *Id.* Meanwhile, Dondero made various filings objecting to settlements, appealing orders, and seeking writs of mandamus. *Id.* He and other creditors filed over a dozen objections to the Independent Board's plan. *Id.* Chief Judge Jernigan confirmed the plan over objections at a hearing in February 2021, and it took effect on August 11, 2021. *Id.* The confirmation order included findings that Dondero was a "serial litigator," that he did not have a "good faith basis to lob objections to the Plan," and that the other board members were "marching pursuant to the orders of Mr. Dondero." *Id.* at 428.

Dondero appealed the confirmation order directly to this court, "objecting to the Plan's legality and some of the bankruptcy court's factual findings." *Id.* We affirmed the reorganization plan and confirmation order in full, with the exception of finding that the bankruptcy court exceeded its statutory authority in exculpating non-debtors in anticipation of "Dondero's continued litigiousness." *Id.* at 427, 432, 439. Though we vacated the exculpatory order as to non-debtors, we clarified that "[n]othing in [our] opinion should be construed to hinder the bankruptcy court's power to enjoin and impose sanctions on Dondero and other entities by following the procedures to designate them vexatious litigants." *Id.* at 439 n.19.

Since then, we have dealt with multiple appeals in this matter. *See, e.g.*, *Matter of Highland Capital Mgmt., L.P.*, 57 F.4th 494 (5th Cir. 2023); *Matter of Highland Capital Mgmt., L.P.*, 98 F.4th 170 (5th Cir. 2024); *Matter of Highland Capital Mgmt., L.P.*, 105 F.4th 830 (5th Cir. 2024).

No. 24-10287

The instant appeal focuses on a series of recusal motions filed by the Dondero Parties beginning in March 2021—after the reorganization plan had been confirmed but before it took effect. The motions argued that Chief Judge Jernigan had developed an animus against the Dondero Parties that caused her impartiality to be reasonably questioned and thus required recusal under 28 U.S.C. § 455.

The Dondero Parties filed the first recusal motion on March 18, 2021. Chief Judge Jernigan denied the motion and reasoned that it was untimely, having been filed 15 months after the case was transferred to the Northern District of Texas and on the eve of Dondero's contempt hearing. She nevertheless analyzed the recusal motion on the merits and determined that recusal wasn't warranted. She reasoned that her presiding over the prior *Acis* case did not create bias because during that proceeding she only learned generalities about the industry and Highland's business structure, and it is appropriate for a bankruptcy court to preside over cases of affiliated business entities of a party. She also stated, citing *Lieb v. Tillman*, 112 B.R. 830, 835–36 (Bankr. W.D. Tex. 1990), that she did not believe that "she harbors, or has shown, any personal bias or prejudice" against Dondero and that the Dondero Parties' assertions did not "rise to 'the threshold standard of raising a doubt in the mind of a reasonable observer' as to the judge's impartiality." The Dondero Parties appealed to the district court, which concluded that the order was interlocutory and not immediately appealable.

Five months later, the Dondero Parties filed a second recusal motion asking Chief Judge Jernigan to issue a final appealable order and supplementing the first recusal motion with additional evidence of alleged bias. Chief Judge Jernigan denied the motion without prejudice on procedural grounds. She noted that the Dondero Parties could file another "simple motion" asking the court to revise the first recusal order to make it final and

No. 24-10287

appealable but without including the supplemental evidence. Alternatively, they could file a new recusal motion based on any alleged new evidence.

The Dondero parties chose to file a third, renewed recusal motion. Chief Judge Jernigan again denied the motion, determining that it was untimely and failed on the merits for the same reasons as the previous recusal motions. Additionally, she catalogued several instances in the motion where the Dondero Parties misstated or mischaracterized events of alleged bias. Chief Judge Jernigan also addressed the Dondero Parties' new accusations regarding her two published novels, which the Dondero Parties contended were patterned after Dondero and expressed exceedingly negative views about his industry. Chief Judge Jernigan stated that her novels "are not about Mr. Dondero or the hedge fund industry in general" and declined to recuse on that basis.

The Dondero Parties filed a petition for writ of mandamus in the district court seeking an order directing Chief Judge Jernigan to recuse herself.[2] The district court denied the petition, finding that the Dondero Parties had "not proved 'exceptional circumstances' sufficient to justify the extraordinary remedy of a writ of mandamus.'" The Dondero Parties timely appealed.

II

Mandamus relief is a "drastic and extraordinary" remedy "reserved for really extraordinary causes." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004) (internal quotation marks omitted); *see also U.S. v. U.S. Dist.*

---

[2] The Dondero Parties initially filed the mandamus petition in the same case as their previous appeal of Chief Judge Jernigan's recusal order. The district court unfiled it and directed the Dondero Parties to file a new action for mandamus relief. The new action is the relevant petition in this appeal.

No. 24-10287

*Ct. for S. Dist. of Tex.*, 506 F.2d 383, 384 (5th Cir. 1974). Three conditions must be satisfied before the writ may issue:

> First, the party seeking issuance of the writ must have no other adequate means to attain the relief he desires . . . . Second, the petitioner must satisfy the burden of showing that his right to issuance of the writ is clear and indisputable. . . . Third, even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances.

*In re LeBlanc*, 559 F. App'x 389, 392 (5th Cir. 2014) (per curiam) (citing *Cheney*, 542 U.S. at 380–81).

We review the denial of mandamus for abuse of discretion. *United States v. White*, 67 F. App'x 253, at *1 (5th Cir. 2003) (per curiam) (citing *United States v. Denson*, 603 F.2d 1143, 1146 (5th Cir. 1979) (en banc)); *see also Cheney*, 542 U.S. at 380.

### III

### A

As to the first requirement for mandamus relief, the Dondero Parties must show that they have no "other adequate means to attain the relief." *Cheney*, 542 U.S. at 380–81. In other words, they must show that any error by Chief Judge Jernigan is "irremediable on ordinary appeal." *In re Occidental Petroleum Corp.*, 217 F.3d 293, 295 (5th Cir. 2000) (emphasis removed). The Dondero Parties' petition easily meets this condition.

We have held that "a petition for mandamus is the appropriate legal vehicle for challenging denial of a disqualification motion." *In re Chevron U.S.A., Inc.*, 121 F.3d 163, 165 (5th Cir. 1997); *see also United States v. Gregory*, 656 F.2d 1132, 1136 (5th Cir. 1981); *In re Placid Oil Co.*, 802 F.2d 783, 786 (5th Cir. 1986); *In re Cameron Int'l Corp.*, 393 F. App'x 133, 134–35 (5th Cir.

No. 24-10287

2010). That is because "remedy by appeal is inadequate" in instances of apparent bias. *Berger v. United States*, 255 U.S. 22, 36 (1921). If a party could not challenge bias until appealable final judgment has issued, prejudice will have already "worked its evil." *Id.* As the Second Circuit has held, "[a] claim of personal bias and prejudice strikes at the integrity of the judicial process, and it would be intolerable to hold that the disclaimer of prejudice by the very jurist who is accused of harboring it should itself terminate the inquiry until an ultimate appeal on the merits." *In re Int'l Bus. Mach. Corp.*, 618 F.2d 923, 926–27 (2d Cir. 1980); *see also* Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3553 (3d ed.).

Claims of judicial bias cannot wait for the ordinary appeals process to run its course. Mandamus is thus the appropriate means for relief here.

B

As to the second requirement for mandamus relief, the Dondero Parties must show that their right to the writ is "clear and indisputable." *Cheney*, 542 U.S. at 380–81. That is, it must be clear and indisputable that Chief Judge Jernigan is required to recuse.

Recusal decisions are reviewed for abuse of discretion, and in general, "if a matter is within the district court's discretion, the litigant's right to a particular result cannot be 'clear and indisputable.'" *Kmart Corp. v. Aronds*, 123 F.3d 297, 300–01 (5th Cir. 1997); *Chevron*, 121 F.3d at 165. The Dondero Parties fail to meet this high burden. *See Chevron*, 121 F.3d at 165 (explaining that mandamus relief of disqualification is "granted only in exceptional circumstances").

Federal law requires a judge to recuse "in any proceeding in which [her] impartiality might reasonably be questioned" or "[w]here [she] has a personal bias or prejudice concerning a party . . . ." 28 U.S.C. § 455(a), (b)(1). The bar for recusal under § 455 is a high one. "[J]udicial rulings and

comments standing alone rarely will suffice to disqualify a judge." *Chevron*, 121 F.3d at 165 (citing *Liteky v. United States*, 510 U.S. 540, 555 (1994)). Even comments "that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Id.* (quoting *Liteky*, 510 U.S. at 555). Recusal is not required when the judge's comments about a particular party are based on proceedings in open court or information learned in earlier proceedings. *See Liteky*, 510 U.S. at 551. Bias requiring recusal must be *personal* rather than *judicial*. *United States v. Scroggins*, 485 F.3d 824, 829–830 (5th Cir. 2007). Judicial bias in the form of adverse rulings and comments on the record ordinarily does not constitute grounds for recusal, unless it "reveal[s] an opinion based on an extrajudicial source or demonstrate[s] such a high degree of antagonism as to make fair judgment impossible." *United States v. Brocato*, 4 F.4th 296, 302 (5th Cir. 2021) (quoting *Scroggins*, 485 F.3d at 830); *see also* Wright & Miller, at § 3542.

The Dondero Parties cite various instances throughout the case that they contend show Chief Judge Jernigan "harbors an actual and enduring bias and animus" against them "that is 'personal rather than judicial in nature.'" Placed in their proper context, none of these instances suffice to show that Chief Judge Jernigan's impartiality might be reasonably questioned or that she had a personal bias against the Dondero Parties requiring recusal under § 455.

The Dondero Parties first take issue with Chief Judge Jernigan's statements expressing negative opinions about Dondero based on information she learned while presiding over the *Acis* case. They cite specifically Chief Judge Jernigan's statement at the January 2020 settlement hearing:

> "I can't extract what I learned during the *Acis* case, it's in my brain, and we did have many moments during the *Acis* case where the Chapter 11 trustee came in and credibly testified that, whether it was Mr. Dondero personally or others at Highland, they were surreptitiously liquidating funds, they were changing agreements, assigning agreements to others. They were doing things behind the scenes that were impacting the value of the Debtor in a bad way."

Based on those concerns, Chief Judge Jernigan ordered that the settlement contain language reading, "Mr. Dondero shall not cause any related entity to terminate any agreements with the Debtor" and that "his role as an employee of the Debtor will be subject at all times to the supervision, direction, and authority of the Debtors." She noted from the bench (though did not order it be included in the settlement language) that if Dondero "violates these terms, he's violated a federal court order, and contempt will be one of the tools available to the Court."

Chief Judge Jernigan's comments regarding the *Acis* case and resulting orders are insufficient to show bias. Her statements about Dondero's role and reliability were judicial, rather than personal, in nature and relevant to her determination that the settlement was proper. And they were based not on any extrajudicial personal bias against Dondero, but on arguments raised by the Creditors Committee and U.S. Trustee about the *Acis* case and on credible testimony from the *Acis* case itself. Chief Judge Jernigan's comments about potentially holding Dondero in contempt of court did nothing but emphasize the law—that failure to follow a court order constitutes contempt. None of this was improper. *See Liteky*, 510 U.S. at 551 (holding that recusal is not required when the judge's comments are based on proceedings in open court); *see also Tejero v. Portfolio Recovery Assocs., L.L.C.*, 955 F.3d 453, 463–64 (5th Cir. 2020) (holding that a judge's knowledge of a party gained from previous cases involving that party does not

qualify as extrajudicial knowledge); WRIGHT & MILLER, at § 3542 ("Nor is the judge disqualified because [s]he has presided over some other case involving the same party or closely-related facts.").

Next, the Dondero Parties take issue with Chief Judge Jernigan's *sua sponte* questioning of the parties about a headline she saw about Dondero or Highland affiliates receiving Paycheck Protection Program loans. At that hearing, Chief Judge Jernigan acknowledged that she is "only supposed to consider evidence [she] hear[s] in the courtroom," but since she inadvertently came upon the headline while reading the news she "needed to ask about this," including about the potential that Dondero was implicated. However, as she later noted in her order denying the third recusal motion, "Neither Mr. Dondero nor any of his affiliated entities were directed to provide any information, no action was taken against them, and the issue was never raised again by the bankruptcy court." A newspaper article is certainly an "extrajudicial" source. *See Brocato*, 4 F.4th at 302. But Chief Judge Jernigan never expressed an opinion on it or took any prejudicial action against Dondero based on it. Her brief comments about the article would not lead a reasonable person to question her impartiality toward Dondero and certainly do not show bias so clear and indisputable as to warrant mandamus.

The Dondero Parties also take issue with Chief Judge Jernigan's various comments characterizing Dondero as "transparently vexatious" and litigious. However, comments disapproving of or hostile to a party aren't sufficient to support a partiality challenge, especially not when they are based on information learned in the judicial process. *See Liteky*, 510 U.S. at 551, 555. And there is ample evidence in the record to support these comments. Such evidence, as laid out in Chief Judge Jernigan's order denying the third recusal motion, includes testimony from one of the Highland independent directors and from Highland's new CEO, Dondero's filing 50 proofs of claim (which were later withdrawn), and "the many dozens of motions; the many dozens

of objections; and the many dozens of appeals" Dondero pursued throughout the bankruptcy case. Chief Judge Jernigan's comments, though certainly critical of Dondero, were based on this record evidence and not on any improper extrajudicial information and as such can't constitute grounds for recusal. *See Brocato*, 4 F.4th at 302.

The Dondero Parties also accuse Chief Judge Jernigan of bias because she often speculated that Dondero was behind motions filed by other parties in the case. For example, Chief Judge Jernigan stated at one hearing that she "agree[d] with part of the theme . . . asserted by the Debtor here today that this is Mr. Dondero, through different entities, through a different motion." And at another hearing on a motion to release funds of a non-debtor party, Chief Judge Jernigan speculated that "likely Mr. Dondero . . . had some involvement" in the decision to bring the motion, which she ultimately denied. Such speculation doesn't constitute grounds for recusal. *See Blanche Road Corp. v. Bensalem Tp.*, 57 F.3d 253, 266 (3d Cir. 1995) (explaining that the court's "suggestion that plaintiffs' counsel had somehow 'maneuvered' to ensure [someone's] appearance as a witness" and its general skepticism of plaintiffs' witnesses weren't grounds for recusal).

The Dondero Parties cite various other instances where Chief Judge Jernigan made rulings or comments adverse to them as evidence of her bias. But in each case, the Dondero Parties largely mischaracterize the context of Chief Judge Jernigan's comments, and there is at least some evidence in the record to support her judgments.

For example, the Dondero Parties cite the following rulings and comments as evidence of bias, none of which are supported by the record:

- The Dondero Parties argue that Cheif Judge Jernigan was biased in making certain findings adverse to Dondero after a February 2021 hearing. But Chief Judge Jernigan's order

No. 24-10287

explicitly stated that her findings were based on "all of the proceedings had before this Court, the legal and factual bases set forth in the Debtor's Papers, and the evidence submitted at the Hearing."

• The Dondero Parties argue that Chief Judge Jernigan appeared biased when she expressed concern that Dondero improperly exercised "powers of persuasion" on the Highland board. But, notwithstanding that comment, Chief Judge Jernigan stated that her adverse ruling was because she just "[did]n't think the evidence has been there to convince [her]" on the merits of the motion.

• The Dondero Parties argue that Chief Judge Jernigan showed bias when she threatened to hold Dondero in contempt at a preliminary injunction hearing. But the record shows Chief Judge Jernigan contemplated holding him in contempt based on evidence including he and his entities doing "things like . . . filing a motion for an examiner 15 months into the case."

• The Dondero Parties argue that Chief Judge Jernigan showed bias when she criticized the Dondero-controlled entities' decision to each retain separate counsel. But Chief Judge Jernigan stated a valid basis for her criticism—concern for judicial economy because the Dondero-controlled entities were each filing the same types of motions or objections when perhaps their resources could have been consolidated.

• The Dondero Parties argue an appearance of bias in what they characterize as "punitive" orders requiring Dondero and certain Dondero-affiliated entities to appear personally at all hearings. But Chief Judge Jernigan explained in her order denying that third recusal motion that she ordered Dondero to attend hearings only after he failed to attend a hearing on or even read a temporary restraining order entered against him.

No. 24-10287

- The Dondero Parties argue that Chief Judge Jernigan's *sua sponte* order requiring the Dondero-affiliated entities to make disclosures to establish their standing shows bias. But further review of the order shows Chief Judge Jernigan required these disclosures "in the interests of judicial economy" and in the interest of "reducing administrative expenses of the estate" because the entities "frequently file lengthy and contentious pleadings."

The Dondero Parties haven't shown that Chief Judge Jernigan based any of the above rulings on any extrajudicial information or pursued them for any personal, rather than judicial, reasons. As a district court judge, Chief Judge Jernigan is entitled to make credibility judgments based on the evidence before her, and it is not our duty to second guess those judgments. *See Ayers v. United States*, 750 F.2d 449, 456 (5th Cir. 1985). Indeed, most of Chief Judge Jernigan's rulings have been upheld on appeal to the district court and our court.[3] *See Regions Bank v. Legal Outsource PA*, 800 F. App'x 799, 800 (11th Cir. 2020) (per curiam) (finding judicial ruling didn't constitute bias where appellate court had affirmed the ruling). Though the Dondero Parties may disagree with her decisions, that is not evidence of bias, or even the appearance of bias. *See Crummey v. Comm'r of Internal Revenue*, 684 F. App'x 416, 422–23 (5th Cir. 2017) (per curiam). Chief Judge Jernigan's adverse rulings alone—or even paired with negative comments about Dondero—are not sufficient to warrant recusal. *See Litecky*, 510 U.S. at 555.

---

[3] For example, the Dondero Parties argue that bias is apparent in one of Chief Judge Jernigan's orders holding him in contempt of court. But we have already affirmed Chief Judge Jernigan's finding of civil contempt. *In re Highland Capital Mgmt., L.P.*, 98 F.4th 170, 172–75 (5th Cir. 2024).

No. 24-10287

Finally, the Dondero Parties argue that Chief Judge Jernigan was required to recuse under § 455 because she published two novels which they argue espouse negative views of Dondero and the financial industry in which he operates. The Dondero Parties cite three parallels between the books and their case which they find problematic. First, Chief Judge Jernigan's novel *Hedging Death* involves a Dallas-based investment fund that manages the same mix of investments as Highland. Her novel *He Watches All My Paths* is also about the financial industry. Second, *Hedging Death* describes certain international tax structures used by Highland and Dondero as "byzantine," a word that Chief Judge Jernigan used several times on the record to describe Highland and Dondero's tax activities. Third, *Hedging Death* describes the life settlement industry as "creepy," and Highland and Dondero invested in the life settlement industry.

The texts of the novels are not in the record before us. But we find the three parallels cited by the Dondero Parties insufficient to show that they are clearly and indisputably entitled to mandamus relief in the form of a recusal order. As the district court emphasized, the novels are fiction. And Chief Judge Jernigan explains in her order denying the third recusal motion that the books are largely about other topics. *He Watches All My Paths* is about a federal judge who receives death threats from a young, former tort victim. *Hedging Death*, though it involves a bankruptcy case and a firm that received funding from a hedge fund manager, is largely about the protagonist bankruptcy court judge. The hedge fund manager character who the Dondero Parties believe is patterned on Dondero is an individual who fakes his own suicide after linking up with Mexican drug cartels—far from the real-life James Dondero. Because the three parallels are so minor when compared to the larger discrepancies between the books and the case, from the information we have in the record before us, it seems that a reasonable reader and observer of these proceedings would not necessarily question Chief

No. 24-10287

Judge Jernigan's impartiality in this case. While some similarities between the books and the cases before Chief Judge Jernigan may raise cause for concern, the similarities are not close enough to find that the district court abused its discretion denying the petition.

Altogether, none of Chief Judge Jernigan's actions or comments "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky*, 510 U.S. at 555. It is not clear and indisputable that Chief Judge Jernigan had personal bias against the Dondero Parties or that her impartiality might be reasonably questioned requiring recusal under 28 U.S.C. § 455. The district court thus didn't abuse its discretion in finding that the Dondero Parties lack a clear and indisputable right to mandamus relief.

## C

As to the third requirement for mandamus relief, having found that the Dondero Parties lack a clear and indisputable right to mandamus, we also find that mandamus is not "appropriate under the circumstances." *Cheney*, 542 U.S. at 380–81.

## IV

Because the Dondero Parties failed to show they have a clear and indisputable right to mandamus relief, the order of the district court denying the petition for writ of mandamus is AFFIRMED.