Case No. 24-10287

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

IN RE HIGHLAND CAPITAL MANAGEMENT, L.P.

JAMES DONDERO; HIGHLAND CAPITAL MANAGEMENT
FUND ADVISORS, L.P.; the DUGABOY INVESTMENT TRUST;
GET GOOD TRUST; and NEXPOINT REAL ESTATE
PARTNERS, LLC,

*Appellants*

v.

JUDGE STACEY G. JERNIGAN,

*Appellee*

On Appeal from the United States District Court for the Northern
District of Texas, Dallas Division
No. 3:23-CV-0726-S
Hon. Karen Gren Scholer, District Judge

## BRIEF OF *AMICI CURIAE*

The Honorable Michael Burrage, OBA No. 1350
WHITTEN BURRAGE
512 N. Broadway Ave., Ste 300
Oklahoma City, OK 73102
Telephone: (405) 516-7800
Facsimile: (405) 516-7859
Email: mburrage@whittenburragelaw.com

*Attorneys for Amici curiae*

# TABLE OF CONTENTS

**INTEREST OF THE *AMICI CURIAE*** ......................................................... 1

**ARGUMENT** ........................................................................................... 2

**I. JUDICIAL IMPARTIALITY IS A CORNERSTONE OF THE AMERICAN LEGAL SYSTEM.** ............................................................................. 2

**II. THE APPEARANCE OF BIAS ARISING FROM JUDGE JERNIGAN'S EXTRAJUDICIAL CONDUCT UNDERMINES JUDICIAL INTEGRITY.** ................................................................... 3

    **A. Judge Jernigan's Extrajudicial Statements and Fictional Alter Ego Amplify Concerns of Bias Against Hedge Funds.** ............................... 5

    **B. A Judge's Expressions of Personal Opinions Toward Broad Groups or Industries Demonstrate a Lack of Impartiality Warranting Judicial Disqualification.** ........................................................................ 7

**III. RECUSAL OR DISQUALIFICATION IS NECESSARY DUE TO ETHICAL CONCERNS STEMMING FROM JUDGE JERNIGAN'S NOVELS, WHETHER THEY ARE FICTIONAL OR NOT, BECAUSE THEY REFLECT HER FINANCIAL GAIN FROM STEREOTYPING AN ENTIRE CLASS OF LITIGANTS.** ........................................................................................ 8

**CONCLUSION** ...................................................................................... 11

# TABLE OF AUTHORITIES

**United States Supreme Court Cases**

*Caperton v. A.T. Massey Coal Co.*,
	556 U.S. 868 (2009). ............................................................................... 3-4

*Commonwealth Coatings Corp. v. Cont'l Cas. Co.*,
	393 U.S. 145 (1968). ................................................................................... 2

*Liteky v. United States*,
	510 U.S. 540 (1994). ................................................................................... 2

*Offutt v. United States*,
	348 U.S. 11 (1954). ..................................................................................... 2

*Rippo v. Baker*,
	580 U.S. 285 (2017). ................................................................................... 4

**United States Court of Appeals Cases**

*Haines v. Liggett Group, Inc.*,
	975 F.2d 81 (3d Cir. 1992). ........................................................................ 7

*Hall v. Small Business Admin.*,
	695 F. 2d 175 (5th Cir. 1983). ................................................................... 3

*Lewis v. Curtis*,
	671 F.2d 779 (3d Cir. 1982). ..................................................................... 2

*M.D. by Stukenberg v. Abbott*,
	No. 24-40248, slip op. (5th Cir. 10/11/2024). ........................................... 2

**State Court Decisions**

*Deren v. Williams*,
	521 So. 2d 150 (Fla. Dist. Ct. App. 1988). ............................................... 7

*Royal Caribbean Cruises, Ltd. v. Doe*,
	767 So. 2d 626 (Fla. Dist. Ct. App. 2000). ............................................... 7

## Judicial Conduct Materials

California Judges Association Judicial Ethics Committee
      Opinion 65 (2010). ................................................................................ 7

CJE Opinion No. 2021-02. (Mass.). ............................................................... 9

FLORIDA STATE COURT JUDICIAL ETHICS BENCH GUIDE,
      Opinions 10-12, 98-01, 89-06. ............................................................... 9

*In re Honorable Josie Fernandez*, CJC Nos. 17-1465 and 18-1078, Voluntary
Agreement to Resign from Judicial Office in Lieu of Disciplinary Action,
      Tex. State Commission on Judicial Conduct. ....................................... 8

## Code of Conduct for United States Judges

Canon 2. ........................................................................................................ 3, 4, 8

Canon 3(C)(1). .............................................................................................. 3

## Articles & Book Reviews

Dan Roe, *Federal Bankruptcy Judge's "Vilifying" Novels Raise Questions Over Impartiality*,
      THE AMERICAN LAWYER (7/23/2024). ................................................. 9

Emma Cueto, *Hardcover Hazards: 4 Ethics Risks for Judges Writing Books*,
      LAW360 (12/7/2017). ........................................................................ 8-9

Hon. Harlin D. Hale, U.S. Bankruptcy Court, N.D. Texas (Dallas), Book Review of *He Watches All My Paths*,
      XXXVIII ABI Journal 4, 52 (April 2019). ........................................... 10

Josiah M. Daniel, III, Vinson & Elkins LLP, Dallas office, 16 State Bar of Texas Bankruptcy Law Section, Newsletter No. 2 (Spring 2019)
      (A Review of *He Watches All My Paths* (2019)). ................................ 10

Justin Rohrlich, *Did Judge Stacey Jernigan Turn Hedge Funder James Dondero Into the Villain of Her Novel?*,
      THE DAILY BEAST (6/30/2022). ......................................................... 4-5

Stephen W. Sather, Bankruptcy Partner, Barron & Newburger (Texas)
      (Judge Jernigan Debuts Her Second Novel) (6/8/2022). ...................... 10

# INTEREST OF THE *AMICI CURIAE*

The *amici* filing this brief are Professor Robert Prentice and Edward "Coach" Weinhaus who bring deep expertise in judicial ethics and accountability.

Professor Robert Prentice, J.D., is a distinguished academic at The University of Texas at Austin, where he has taught business law and ethics for over three decades. He is the Ed and Molly Smith Professor of Business Law, Chair of the Business, Government & Society Department, and Faculty Director of the renowned "Ethics Unwrapped" video series, which promotes ethical decision-making and has garnered national recognition. Professor Prentice has authored numerous textbooks and articles on business law and ethics.

Edward Weinhaus, Esq., is a renowned judicial reform advocate and publisher of *Abusive Discretion*, an independent news organization dedicated to covering judicial misconduct to improve the functioning of courts. Through his extensive work, including the founding/operation of nonprofit judicial accountability organizations and publications, including the Legal Accountability Project and ChildrenOfTheCourt.org, Mr. Weinhaus has consistently championed the principles of judicial impartiality and fairness.

# ARGUMENT

## I. JUDICIAL IMPARTIALITY IS A CORNERSTONE OF THE AMERICAN LEGAL SYSTEM.

The U.S. legal system is predicated on the principle that justice must not only be impartial but must also appear impartial to the public. In a recent opinion of *M.D. by Stukenberg v. Abbott*, No. 24-40248, slip op. at 36 (5th Cir. 10/11/2024), the Fifth Circuit underscored the importance of judicial impartiality, ordering the recusal of a district judge after finding that her intemperate conduct risked undermining public confidence in the fairness of the proceedings. "Impartiality and the appearance of impartiality in a judicial officer are the *sine qua non* of the American legal system." *Lewis v. Curtis*, 671 F.2d 779, 789 (3d Cir. 1982). This standard ensures that every litigant can trust his or her case will be heard by a judge with an open mind, free from bias or prejudice against any party or class of parties. The Supreme Court has long recognized that "justice must satisfy the appearance of justice." *Offutt v. United States*, 348 U.S. 11, 14 (1954); *Liteky v. United States*, 510 U.S. 540 (1994) (a federal judge is required to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned."); *Commonwealth Coatings Corp. v. Cont'l Cas. Co.*, 393 U.S. 145, 150 (1968) (the judge "not only must be unbiased but also must avoid even the appearance of bias"). Federal judges are bound by the Code of Conduct for United States Judges, which mandates that judges act with integrity, avoid the appearance

of impropriety, and perform their duties impartially. Canon 2 explicitly requires judges to "avoid impropriety and the appearance of impropriety in all activities," while Canon 3(C)(1) directs judges to "disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned." The appearance of partiality may arise when in fact there is none. *Hall v. Small Business Admin.*, 695 F. 2d 175, 179 (5th Cir. 1983).

Despite these standards, Chief Judge Jernigan has engaged in repeated extrajudicial statements by way of authoring two novels, *He Watches All My Paths* (2019) and *Hedging Death* (2022), which express strong personal biases against broad classes of litigants, including hedge funds, cryptocurrency participants, and others. Judge Jernigan's extrajudicial writings and public statements have created precisely the type of appearance of bias that the Canons were designed to prevent. As detailed in the record, these materials convey strong, negative views about hedge funds and their managers, a class of litigants that regularly appears in her court.

## II. THE APPEARANCE OF BIAS ARISING FROM JUDGE JERNIGAN'S EXTRAJUDICIAL CONDUCT UNDERMINES JUDICIAL INTEGRITY.

The appearance of bias resulting from extrajudicial conduct erodes public confidence in the judiciary, undermines the integrity of the legal system, and necessitates strict adherence to the principle that justice must not only be impartial but must also appear impartial. In *Caperton v. A.T. Massey Coal Co.*, 556 U.S.
3

868, 891 (2009), the Supreme Court recognized that recusal is constitutionally required when circumstances create a serious risk of bias that undermines public confidence in the judiciary. The Supreme Court's decision in *Rippo v. Baker*, 580 U.S. 285, 287 (2017), underscores that recusal is constitutionally required not only in instances of actual bias but also when "the risk of bias is too high to be constitutionally tolerable." Judge Jernigan's novels, which include overt critiques of hedge funds, and her public commentary suggesting animus toward the hedge fund industry, create an appearance of bias that is inescapable. Furthermore, Canon 2 of the CODE OF CONDUCT FOR UNITED STATES JUDGES mandates that "[a] judge should [not] lend the prestige of the judicial office to advance the private interests of the judge[.]" Yet Judge Jernigan's marketing and promotion of her novels,[1] which are tied to her judicial experiences, blur the line between her judicial role and her personal endeavors. The use of her judicial status to advance the visibility and sales of her novels violates this principle, further eroding public confidence in her impartiality. The above concerns are exacerbated by her admission that the characters in her novels are inspired by real-life hedge fund managers she has encountered during her judicial tenure. *See* Justin Rohrlich, *Did Judge Stacey*

---

[1] *See* https://twitter.com/SJNovels, https://www.instagram.com/sjnovels, https://www.facebook.com/hewatchesallmypaths.

*Jernigan Turn Hedge Funder James Dondero Into the Villain of Her Novel?*, THE
DAILY BEAST (6/30/2022)[2]; *see also* ROA.10287.78.

### A. Judge Jernigan's Extrajudicial Statements and Fictional Alter Ego Amplify Concerns of Bias Against Hedge Funds.

Judge Stacey Jernigan's overt hostility toward the hedge fund industry, evident in her novels and public statements, raises significant concerns about her impartiality. In her crime novels, *He Watches All My Paths* (2019) and *Hedging Death* (2022), the hedge fund industry is depicted as villainous, with her protagonist, Bankruptcy Judge Avery Lassiter, delivering scathing critiques of hedge funds and their culture. For example, in the 2019 novel, Judge Lassiter describes hedge fund managers as "Wall Street assholes" who "essentially suck up money … like an i-Robot vacuum cleaner from every corner of the universe" and claims they "make money no matter what" by taking "20% of the assets they invest" and "2% of the profits." *He Watches All My Paths* at 100, 130-31.[3] The novel further disparages the industry, describing its participants as "bombastic talkers imbued with an outrageous amount of hubris" who live in a "bro culture" and frivolously spend on "airplanes and racehorses like it was candy." *Id*. The judge even equates hedge funds with evil, stating repeatedly that money, "the root of all evil," is emblematic of the industry. *Id.* at 27, 100. In her 2022 novel, Judge

---

[2] Available at https://www.thedailybeast.com/did-judge-stacey-jernigan-turn-hedge-funder-james-dondero-into-the-villain-of-her-novel (accessed 12/10/2024).
[3] Kindle edition page numbers.

Jernigan doubles down on her animus, referring to hedge funds as the "Hedge Hog" profession and associating their managers with fraudsters and even "former Nazis." *Hedging Death* at 11. Such statements, rife with bias, factual inaccuracies, and generalized stereotypes, compromise public confidence in her neutrality in cases involving hedge funds.

The parallels between Judge Jernigan's real-life role and her fictional alter ego, Judge Avery Lassiter, exacerbate these concerns. Judge Jernigan, a bankruptcy judge in the Northern District of Texas (Dallas), shares numerous biographical details with Judge Lassiter, including being a bankruptcy judge working in the Earle Cabell Federal Building, being married to a Dallas police officer who formerly coached high school football, having two kids (a boy and a girl), owning a King Charles Spaniel, working at "Big Law" for 17 years during the 1990s, and presiding over high-profile cases such as the bankruptcy of a professional sports team and a Chapter 15 bitcoin case involving "Russian hackers" and "rogue government agents." *See He Watches All My Paths* at 22-23, 26-27, 51, 84, 86, 163-66; *Hedging Death* at 9, 11, 69. These similarities, including the portrayal of her real-life colleague Judge Hale as "Judge Hall," her "bowtie-wearing colleague down the hall," blur the line between fiction and reality. *See He Watches All My Paths* at 222-23; *Hedging Death* at 26-27. By embedding her personal biography into her novels, Judge Jernigan amplifies the perception that

the views expressed by Judge Lassiter are reflective of her own judicial mindset. This conflation raises serious questions about her impartiality and her hero's arc challenges real-life litigants' due process rights.

> **B. A Judge's Expressions of Personal Opinions Toward Broad Groups or Industries Demonstrate a Lack of Impartiality Warranting Judicial Disqualification.**

Expressions of personal opinions, whether positive or negative, about broad groups or industries undermine impartiality and necessitate judicial disqualification to maintain the integrity of the judicial process. Judicial precedent supports this principle. In *Deren v. Williams*, 521 So. 2d 150, 151 (Fla. Dist. Ct. App. 1988), a judge's public comments expressing sympathy for persons with cerebral palsy required recusal in a specific case involving an individual with cerebral palsy. Similarly, in *Royal Caribbean Cruises, Ltd. v. Doe*, 767 So. 2d 626, 626 (Fla. Dist. Ct. App. 2000), a judge's negative statements about the cruise line industry warranted disqualification in a case involving that industry.

Extrajudicial writings and statements further highlight the importance of this principle. For instance, in California Judges Association Judicial Ethics Committee Opinion 65 (2010), a judge's writings critical of corrections officers' unions were found to cast doubt on the judge's ability to act impartially in cases involving prison guards. Similarly, in *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 97-98 (3d Cir. 1992), the Third Circuit disqualified a judge who had criticized the tobacco

7

industry, stating that the judge's remark describing the industry as "the king of concealment and disinformation" undermined the appearance of impartiality. *Id.*

In addition, modern ethical standards have recognized the unique impact of public comments and social media posts on the perception of judicial neutrality. The Texas State Commission on Judicial Conduct found that a judge's comments and posts expressing disdain for specific classes of people violated ethical obligations. *In re Honorable Josie Fernandez*, CJC Nos. 17-1465 and 18-1078, State Commission on Judicial Conduct.[4]

### III. RECUSAL OR DISQUALIFICATION IS NECESSARY DUE TO ETHICAL CONCERNS STEMMING FROM JUDGE JERNIGAN'S NOVELS, WHETHER THEY ARE FICTIONAL OR NOT, BECAUSE THEY REFLECT HER FINANCIAL GAIN FROM STEREOTYPING AN ENTIRE CLASS OF LITIGANTS.

The ethical obligations of judges to avoid even the appearance of impropriety extend to extrajudicial writings, including fiction, and mandate recusal in cases where public confidence in impartiality is at risk. Canon 2 of the Code of Conduct for United States Judges emphasizes this duty, as does guidance from legal ethics experts and judicial advisory committees. For example, former Illinois Circuit Judge Raymond J. McKoski highlighted that judges must maintain integrity "in fact and in appearance." Emma Cueto, *Hardcover Hazards: 4 Ethics Risks for*

---

[4] Available at https://scjc.texas.gov/media/46851/fernandez-voluntary-agreement-102221-executed.pdf (accessed 12/9/2024).

*Judges Writing Books*, LAW360 (12/7/2017).[5] Similarly, the Massachusetts Committee on Judicial Ethics stressed that even in fictional works, judges should not convey predispositions on matters that could appear before them. CJE Opinion No. 2021-02.[6] Judge Jernigan's novels, which fictionalize themes related to her judicial role, raise concerns about bias. As Georgetown Law Professor Adam Levitin observed, such writings risk creating perceptions of partiality. Dan Roe, *Federal Bankruptcy Judge's 'Vilifying' Novels Raise Questions Over Impartiality*, THE AMERICAN LAWYER (7/23/2024).[7] A former U.S. Bankruptcy Judge echoed this concern, stating that writing novels about judicial duties fails to uphold the standard of avoiding the appearance of impropriety. *Id.* Consistent with Florida's Judicial Ethics Advisory Committee, judicial authorship is permissible only if it does not "cast reasonable doubt" on impartiality. FLORIDA STATE COURT JUDICIAL ETHICS BENCH GUIDE, citing Opinions 10-12, 98-01, 89-06.[8] Given these considerations, recusal in this case is necessary to safeguard the integrity and credibility of the judiciary.

---

[5] Available at https://www.law360.com/articles/990026/print?section=legalethics (accessed 12/9/2024).
[6] Available at https://www.mass.gov/opinion/cje-opinion-no-2021-02 (accessed 12/9/2024).
[7] Available at https://www.law.com/americanlawyer/2024/07/23/federal-bankruptcy-judges-vilifying-novels-raise-questions-over-impartiality/ (accessed 12/9/2024).
[8] Available at https://jeac.flcourts.gov/Opinions-by-Year/1998-Opinions/98-01 (accessed 12/9/2024).

It is undisputable that even fictional extra-judicial writing done for profit by a sitting judge can form the basis for disqualification based on an appearance of bias. Having said that, it is critical to note that Judge Jernigan's colleagues and members of the bankruptcy law community that know her best described her novels as being "autobiographical"[9] and that in these novels, Judge Jernigan is speaking through her "alter ego's voice"[10] providing "[Jernigan's] reflections about being a bankruptcy judge" and offering Judge Jernigan's insight "about the legal system, one that should be of particular interest to bankruptcy judges and professionals".[11] These public observations by Judge Jernigan's colleagues that Judge Jernigan's novels are autobiographical and reflect Judge Jernigan's own

---

[9] "Judge Jernigan's novel might be termed …. 'really autobiography mingled with fiction …. Particularly resonant and valuable passages of the novel for bankruptcy lawyers are the author's [Jernigan's] reflections about the task of judging in bankruptcy cases …. [B]ankruptcy lawyers will savor the book with its rich details of the life and work of a bankruptcy judge." Josiah M. Daniel, III, Vinson & Elkins LLP, Dallas office, 16 State Bar of Texas Bankruptcy Law Section, Newsletter No. 2 (Spring 2019) (A Review of *He Watches All My Paths* (2019)), available at https://papers.ssrn.com/sol3/Delivery.cfm/SSRN_ID3351506_code2093329.pdf?abstractid=3351506&mirid=1 (accessed 12/9/2024).

[10] "[ Judge Jernigan's] first book is very personal …. it is clear that it is Judge Jernigan speaking through her alter ego's voice …. Judge Jernigan shows the wisdom of writing what she knows about." Stephen W. Sather, Bankruptcy Partner, Barron & Newburger (Texas), available at https://stevesathersbankruptcynews.blogspot.com/2022/06/judge-jernigan-debuts-her-second-novel.html (accessed 12/9/2024). Full book review (including the quote above) was posted by Judge Jernigan in her Twitter and Instagram accounts on 6/18/2022: https://x.com/SJNovels/status/1538265747855654913; https://www.instagram.com/p/Ce9f9OqO5r5/).

[11] "Bankruptcy Judge Stacey G. C. Jernigan of the Northern District of Texas recently published an excellent novel about the legal system, one that should be of particular interest to bankruptcy judges and professionals …. " Hon. Harlin D. Hale, Bankruptcy Judge, N.D. Texas, Book Review of *He Watches All My Paths*, XXXVIII ABI Journal 4, 52 (April 2019), available at https://www.proquest.com/openview/43e9c70c4f2181354f1c95d274312e47/1?pq-origsite=gscholar&cbl=33486 (accessed 12/9/2024).

personal views were expressed in writing, publicly, and—most importantly—with Judge Jernigan's approval and apparently for monetary gain.

## CONCLUSION

For these reasons, *amici curiae* respectfully urge the Court to rehear this matter en banc and reverse the district court's order.

> Dated: December 10, 2024.
> Respectfully submitted,
>
> /s/ Michael Burrage
> Michael Burrage, OBA No. 1350
> WHITTEN BURRAGE
> 512 N. Broadway Ave., Ste 300
> Oklahoma City, OK 73102
> Telephone: (405) 516-7800
> Facsimile: (405) 516-7859
> Email: mburrage@whittenburragelaw.com

## DISCLOSURE REGARDING AUTHORSHIP

*Amici* and their counsel affirm that this brief was not authored, in whole or in part, by counsel of record for the parties. Further, no party or party's counsel contributed money that was intended to fund the preparation or submission of this brief, and no individual or entity other than *amici* or their counsel provided any monetary contribution to fund its preparation or submission.

Dated: December 10, 2024.
Respectfully submitted,

/s/ Michael Burrage
Michael Burrage, OBA No. 1350
WHITTEN BURRAGE

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit prescribed by Fed. R. App. P. 29(b)(4) because it contains 2,599 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman font size 14.

Dated: December 10, 2024.
Respectfully submitted,

/s/ Michael Burrage
Michael Burrage, OBA No. 1350
WHITTEN BURRAGE

# CERTIFICATE OF SERVICE

This is to certify that this brief was served this day on all parties who receive notification through the Court's electronic filing systems.

        Dated: December 10, 2024.
        Respectfully submitted,

        /s/ Michael Burrage
        Michael Burrage, OBA No. 1350
        WHITTEN BURRAGE